v. Daniel Maloney and David Maloney in Maloney Transport Ltd. On behalf of the Avalon, Mr. Roger Goble. On behalf of the Avali, Mr. Daniel O'Malley Calderaro. Mr. Goble. May it please the Court, my name is Roger Goble. I represent the plaintiff, Carolyn Maloney, in this matter. This is a story that has a lot of threads to it. My proposal is to start by following one of those threads for you. In the course of discussing that thread, address hopefully the substantive procedural law of the case, which we believe was improperly handled. Before you get to that point, is there any reason why there's no report of proceedings, bystanders report, transcripts of the Court's rulings? The Court is, of course, referring to the rulings on the discovery motions that were denied by Judge Popejoy. Right. And how do we know the reasons for the denial? You know the reasons for denying from looking at – well, let me, rather than answer your question, tell you what I believe to be the case, which is it doesn't matter why he denied them. It matters whether you can find from the record that you do have whether those discovery requests were appropriate or whether they were improperly denied by the judge given the standards that you have to apply. The fact that there is no transcript, which in both or three of the instances amounts to nothing more than respectfully I've read the briefs, thank you very much, motion denied, it's not going to add anything to the mixed weight. You have enough of a record under the case law, as I understand it, to decide those issues. The reason they weren't asked for is because, in my experience, one doesn't get transcripts when one has a two-minute hearing on a discovery motion, even if it takes an hour to appeal. Well, you could have filed a bystanders report, could you not? I could have obtained an actual transcript. As the Court may know, there is a recording system in the DuPage County Courthouse that takes everything. And there were, in fact, matters where it did become important what the judge said, why he said it, where there were transcripts obtained. It was one instance like that. It was a matter of simply believing that the record was adequate the way that it was and under existing case law unnecessary. I don't know that we necessarily agree, but proceed with the argument. Thank you for giving me the opportunity to expand on that initial situation. You all know that this is about Family Corporation. You all know that Family Corporation is a trucking company. I'm going to focus on just one of the matters of proof that is uncontroverted. That is the Acacia transaction. In this transaction, we have Maloney Transport, a company that is owned, owned by the plaintiff and the defendants. There's no question about that. The plaintiff owns 20 percent of the stock in the corporation. All the discussion about whether she did enough work or whatever, totally red herring. It's not relevant to the issues that the court gets to decide. The question is, does she own it? The defendants admitted in their answer and acknowledged in trial that she owned 20 percent of the stock in the corporation all the relevant times. While she owns the stock, her sons decide that there's trouble on the horizon, and so they're going to protect themselves. They're going to take a key asset of the corporation, its trucks, and put it into another name. Another name is, in fact, a company called Acacia, a corporation called Acacia. The owners of that company are not the three owners of Maloney. They are Mrs. Maloney's sons only. They take the trucks and transfer those trucks into their company, Acacia. They take the business of Maloney Transport, which is the customers that have been built up over the 15, 20 years that the company's been in business, and they, in effect, transfer that business to Acacia by having some kind of an extremely nebulous lease agreement between Maloney Transport and Acacia that results in hundreds of thousands of dollars being moved from Maloney's pockets, after Maloney collects from the customers for doing the movement, the cartage, into Acacia's pocket. Now, Acacia leaves Maloney with all the expenses. They leave Maloney with all the costs of maintenance of the trucks. They leave Maloney with the obligation to pay the loans. All that they're paying is the amount that the loan payments are as a pass-through. It's a net lease that's somehow being devised, not in writing, and when we asked to inquire about what situation was with Maloney and Acacia, we were blocked by Judge Pope Joy from getting Acacia records for reasons that I can't fathom, but that was the case. We do know, however, that the money is all flowing right out the side door, totally in violation of the clear fiduciary obligation of the Sons as co-shareholders, as officers, as directors of Maloney Transport, Inc., to act in a way that is in the economic benefit, proportionately, of all the shareholders. Who was responsible for managing the financial affairs of the corporation? I'd say a fair answer is that David Maloney was responsible from day to day for managing the financial affairs, although there was a bookkeeper named Palmer who seemed to be doing a good deal of the actual work. Mrs. Maloney, by the time we're talking about in the 1990s, was not given any information about what was going on with the company. And as long as the company is being run appropriately for the benefit of all the shareholders, I don't know that that's such a terrible thing, but nevertheless, at a very minimum, to take a corporate action like taking all of the, call it rolling stock, all the trucks of Maloney and transferring them out, a major corporate decision, at a very minimum, there ought to be a meeting of the directors for that kind of a policy decision. Probably, more appropriately, the shareholders and a resolution adopted. Is there a question over the consideration that was given in return for the sale of these assets? I don't believe there is. I think it's clear that the sole consideration that was given was the assumption of the outstanding balances on the loans that were owned by Maloney Transport. And as the Court recalls, not only did this leave the loans that Maloney had on the books of Maloney, it also triggered an income tax event that was, in terms of cash flow, disastrous to Mrs. Maloney. But for the fact that her son, one of her sons volunteered to give her some cash, when it came time to pay her income taxes, she would have been wiped out by an income tax event that created no cash flow to her, but that created a substantial amount of income. Wherein is Judge Popejoy's judgment manifestly erroneous or against the manifest way of the evidence? By dismissing, well, this is just one example of that. This whole business with the trucking situation, where I've got, he has two gentlemen ignoring their fiduciary duty to their co-shareholder, dealing for their sole benefit. Well, did he not determine that they did not breach their fiduciary duty? And if he decided that, he apparently based it on something, did he not? I have no idea what he based it on, because there is nothing in the record for him to base that decision on. It's clear that they took the trucks for themselves. They said for themselves in an answer to the derogatories, they took these trucks to protect Maloney Transport, but Maloney Transport, meaning the sons and the mother, was gone. The trucks were with the sons. Do we even know what the book value of the trucks were? No. Were they fully depreciated so they were virtually junk? They were substantially depreciated because they caused a substantial amount of income tax. However, the sons testified that as of the time of the trial, they were still using all these trucks to run business. They were not junk. Could we go back to what I asked, which is wherein was the judge's judgment against the manifesto aid? His judgment that there wasn't a breach of fiduciary duty on the part of the sons was contrary to the manifest way of the evidence. And they breached it because they didn't have a resolution? They breached it because they took the trucks for themselves and gave no benefit at all to their co-shareholders. Why do you say they took them for themselves when I thought you said they placed it in a corporation? Are you telling us that they owned that corporation? They owned the corporation. The testimony was that they owned the corporation. They were the sole owners of Acacia. And, in fact, they are still, as of the time of the trial, Acacia was still leasing those trucks to Kingsway, a third corporation that came into play where the sons are now drawing salaries as managers of Kingsway. Clear breach of their duty to their third shareholder. Just totally lacking reliability. Well, that's the argument. Judge Polkjoy made an oral pronouncement from the bench that ran about 37 pages in which he recited some very specific factors as to why he was granting a motion for a directed finding. Correct? He did. He didn't just say I'm ruling for the defendants. So wherein did he err? Why is an opposite conclusion to his detailed rulings clearly apparent? Because that's your hurdle in this case. With all due respect to Judge Polkjoy, he was wrong. When he found that there was no breach of fiduciary duty, that was a statement that can't be supported by the record. Counselor, I think we're asking you to go one more layer down. If you could point to some findings that the trial judge made and suggest that those findings are not supported by the record, not the conclusion. His finding that I understand to be wrong is that there was no breach of fiduciary duty. His finding was that the two majority shareholders did nothing that was improper in the breach of their fiduciary duty because there was nothing to contradict the evidence that, for example, the Sons took the trucks out the side door. There is nothing in the record to contradict the fact that the Sons bought a piece of real property to be used by Maloney Transport. One of the reasons they could buy that property was that they had a ready tenant for that property. The ready tenant was Maloney Transport. There were assets in the corporation called trucks, correct? Yes. And title of those things were transferred out of the corporation. They were liquidated, correct? Yes. Did your client see any of those assets distributed to her? Not one. Did the trial court make findings to that effect? No. Did the trial court make any findings relative to liabilities that your client might have faced had it not been transferred out? The trial court simply ignored those facts. You mean those facts and that evidence? Those facts and that evidence, yes. So as your client sits here today, she was 20% shareholder of a corporation that had assets. Those assets were transferred out of that corporation, and she is no longer a 20% shareholder of anything other than a Shell Corporation? That's correct, Your Honor. And it was more than just the assets that were represented by the trucks. It was a book of business that had been built up over the years by the corporation. I'm certain that beyond the cases that I cited and the counsel cited, there were other cases like this. The situation here is that you have a shareholder in a closely held corporation who starts to feel like, well, I'm doing all the work here. I ought to get all the money, and this isn't fair to me. And they forget about the fact that legally they all own in proportionate shares whatever economic value there is in that corporation, and they can't, by subterfuge or sliding things out the side door, however you want to call it, they cannot take away the economic ownership that their minority partner had. Well, is that the standard? Or is it standard that, I mean, you have the burden of proving the case. Judge Polkjoy had announced as I'm perusing the transcript here on page 39 that he reviewed the evidence. He hasn't found anything that Daniel and David did from a business standpoint that was a deliberate or wrongful action. He didn't find any evidence of them misappropriating funds, willful one, or oppressive conduct. That was the conclusion he reached based on the evidence where you have the burden. So, again, the issue is why was that erroneous? Why is that against the manifest way? Because any reasonable person looking at this record must come to the conclusion that there was breach of fiduciary duty on the part of the two defendants. It's inconceivable that somebody could look at this transaction where suddenly the trucks are taken by a different corporation, the sons get all the cash flow, and the mother and I as a corporation with greatly diminished value is something that isn't a breach of fiduciary duty. Fiduciary duty means utmost fairness. Fiduciary duty comes, one, from their being shareholders. It comes, two, from the fact that there's a family relationship here, another basis for fiduciary relationship. She trusted her sons to do the right thing by her, and they didn't. They didn't tell her. They simply moved things out the side, and as the evidence shows, didn't tell her what was going on. They told her that there was some terrible lawsuit that was pending by Juul that was going to wipe them all out and they had to do something. She should turn over her stock to him, to them, to the sons, just give it up to her because he has no value. Are you claiming that these assets were sold for insufficient consideration? I thought you said that was not the case.  I'm trying to reframe it in the way that you asked the question in response. The claim is that the sons took assets and didn't pay anything for them. So, yeah, there was an inadequate kind of consideration. They took the business, and it's not just a matter of the trucks. It's a matter of the trucks plus the business. What they did was they, as the managers of Maloney Transport, then after the trucks had been titled into the name of Acacia, directed all of the cash flow of Maloney Transport to Acacia. There is in the records of Maloney Transport. And you're arguing this was done by the sons for what ostensible purpose? What gain? What did they gain from doing this? They gained the fact that now they had a trucking business without having to worry about making any payments to their mother. That was the goal. Straightforward. It was avarice. Okay. Thank you. You'll have an opportunity for rebuttal. I'm sorry. Thank you. Did you hear what I said? You said thank you, opportunity for rebuttal. I said thank you. You will have an opportunity to make rebuttal. Yes, thank you, sir. Thank you. Mr. Calderaro? Yes, Your Justices. Good morning. Danny Calderaro, Federal Officer Richard D. Felice, practicing out of Wheaton. On behalf of the defendants, Danny Maloney, David Maloney, Maloney Transport, Ltd. As an initial outset, we believe the judgment in the trial court should be affirmed on several bases. We have two bases that we raised on the appeal. One, on the discovery issues, all pre-trial. And second, on the trial itself, on a manifest way to the evidence standard. To start out, I would like to talk about the discovery issues that were all denied. There's six orders that have no reported proceedings in the transcript. Well, actually, I fixed that. There's five. One order that does have a reported proceeding in the transcript we included in our appendix. And relying on title bound, we want to assert the defenses of these discovery orders in light of the fact that the reported proceedings were improperly prepared, and it doesn't give us an opportunity to reply sufficiently, and it doesn't give the court an opportunity to review the issues fully, as the trial court reviewed it. Did your office handle this litigation on the trial court level? Yes, Your Honor. Okay, so you're familiar with the reasons for the rulings? Yes, Your Honor. Did this Pope George just say granted, denied, or did he announce reasons for his ruling? He did announce reasons for the ruling. A lot of the motions for discovery were motions on subpoenas, and they were motions to quash the subpoenas. Certain subpoenas were served upon non-defendants, like Kingsway Logistics, and another non-defendant was Acacia. There was a motion to strike a jury demand, which is arguably a de novo review, but it was a motion for a jury demand in the context of breach of fiduciary duty, which did not exist at common law, and that law is pretty well settled, that there's no right to a jury in a breach of fiduciary duty case. Now, Your Honor, moving to the actual judgment itself, we believe that the judgment was well reasoned, and about 30 pages long, maybe 15 to 30 pages long, where Pope Joy utilized the correct process under Podramos, and I think Sherman v. Searns in the Supreme Court case detailed that process under a 21110 post trial in a non-jury case. It's important to understand that procedure because of the specific fact that the defense hasn't put it on a case yet. Now, there's two ways the court can address that procedure. One, the court could, from the outset, could state that the plaintiff hasn't made their case as a prompt facial ruling, and in that matter, it would be a review as a matter of law, stating that one of the elements wasn't made. However, that's not what the judge, Pope Joy, did. And on a 21110 procedure, the court essentially could also, as an initial matter, find that they did make some kind of showing on each element, and after that, go to weigh the evidence. And once the court weighs the evidence, it necessarily finds that it made its prompt facial case showing. But also, as the court weighs the evidence, the weighing process under Sherman v. Searns can come to the conclusion that some of those elements have been negated by the weighing process, and we think that's what it exactly is. Let me ask you this. The record is somewhat convoluted, but what counsel seems to be alleging, there was some type of avarice, almost tantamount to some type of a fraud, that the sons perpetrated on their mother in a supposedly held corporation. So in summary fashion, can you tell us why that was not the case? Well, it was not the case because there was simply no evidence of that happening. One of the big contentions is that the trucks were transferred out in an underhanded or heavy-handed manner to benefit them, reach fiduciary duty, and cause harm to their mother, removing those assets from her control as 20 percent shareholder. However, the fact that it came out at trial was those trucks were actually transferred to protect the trucks because Maloney Transport Limited at the time was involved in litigation with Jewel Foods under a trucking accident, and the liability was through the roof on that, and that's what started some of these transactions in order to protect those assets. And that's probably the biggest one. But the court found that there was no evidence, there's no evidence that the sons were being heavy-handed or burdensome. And I would also like to note that in the plaintiff's case in chief, every single defendant testified. Carolyn Maloney testified, Daniel Maloney testified, and David Maloney all testified as to what was happening at these times. And the court found that under the 21110 motion that certain elements were negated, and that the court made specific findings that there was no proof of the loan. Besides for the first trial, there was no proof of the loan of any of the other trials. How was Mrs. Maloney supposed to be protected if she was to give up her stock or if her stock became worthless? How does that protect her? I'm sorry, Your Honor. How does? Well, she had a 20% interest in a corporation that had assets and liabilities. Yes. You're suggesting that the liabilities may have outweighed the assets. Yes. Did the trial court make findings of fact that the assets were off by a factor of one-tenth of what the liabilities were, such that her stock was worthless, and therefore the transaction could not have been a breach of duty because she could not have been injured in any way, shape, or form? No, Your Honor. Actually, the trial court made a finding that there was no evidence to show any of the allegations that the plaintiff was trying to assert. It was very important for the plaintiff to actually substantiate the allegations that he was making in his complaint. And the court found that those allegations were not substantiated and that there was nothing to show. There was no experts brought in to show the value of the corporation, no experts brought in to show a diminution of the value of the corporation or the necessary assets that were in the corporation at the time. So essentially what the court found was that ultimately it was a failure of proof, and as all of the defendants testified in the case in chief, there was a well-reasoned opinion, allowing all the others to come in, that would have come in. Are you saying that the trial court found that there was no breach of fiduciary duty because there was no proof as to what the value of the corporation was, such that any illiquidation would not have inured to their benefit over that of their mother? Yes, Your Honor, I believe that's exactly what happened, because when the court moves to the second problem under a 21110 analysis, it automatically has decided that the prima facie case has been met. That's under the Title Bomb case in this district, and I believe it's also Sherman v. Searns, an Illinois Supreme Court case, that details the fact on a 21110 procedure. I believe that's also Sherman v. Searns, and I believe that's also Sherman v. Searns, and I believe that's also Sherman v. Searns, that the plaintiff had to make it showing the 21110 procedure wouldn't be possible if the defendant had to put out a case in chief. But in this case, all the defendants and the plaintiffs, everyone testified, and there were a couple other witnesses there, family members, who also testified to what was going on, and the judge made a very reasoned ruling upon all the evidence that was deduced, showing no proof of overbearing or heavy-handed actions, no proof of what the rightful return of such capital would have possibly been. If there was a rightful return of capital to get, an expert would have been appropriate in this case to come in and state the assets, state the rightful return, and none of that was done. So I think ultimately, it was essentially a failure of proof in which they needed some of the elements under the 21110 procedure. Were you the trial attorney? No, Your Honor. It was Mr. Fleece who was the trial attorney. Are you an associate with Mr. Fleece? Yes, Your Honor. Was there any attempt at discovering the books of Mahoney Trucking? Yes, there was. I believe there was a supplemental appendix or supplemental documents given to the court in this case that we didn't object to. I believe that there's a lot of books in there, but I'm not exactly sure everything. It's extensive. It's about maybe seven inches deep. But the real problem, I think, was that where the plaintiff tried to bring in other defendants that were not part of the cause of action, that were never applied or served, tried to start serving them with subpoenas, tried to start serving them with interrogatories and discovery proceedings that the court found inappropriate because they weren't a defendant. And ultimately, the last row for the plaintiff to serve additional interrogatories was denied for the specific reason that there was no good cause shown to issue any more of those. Subpoenas made to Kingsway, not a defendant, were quashed. Subpoenas made to Acacia, not a defendant, were quashed. And under those circumstances, we believe all of those were appropriate. They could have easily been made defendants and pled into the case, but they were not. But there's also, you know, the ruling itself is pretty clear, and I think it's pretty extensive. And the judge really goes through every single element of the cause of action on a point-by-point basis and analyzes the weight of the evidence and the credibility. And essentially, it looks like the plaintiff just really ultimately didn't make its case in the end after all of the defendants were called to testify. In the plaintiff's case in chief, there was a full cross-examination of each witness. And ultimately, there was no proofs, no experts, no proof of any capital contribution by Caroline Maloney other than the $1,650. Whatever happened with the juul litigation? The juul litigation ultimately got resolved successfully. I believe it was settled, and I believe there was a technical ruling that wouldn't ultimately cause Maloney to be liable for that. I believe it was an assurance, maybe a subrogation issue that didn't even have Maloney ultimately considered in that. That was kind of one of the big blasts, so to speak, in order to protect the assets of the company. Now, there was no proof. The judge made it clear there was no proof of any usurping, no proof of any redirection of income from Acacia. There was no testimony on those facts. There was no proof of any damages to Caroline Maloney. She would have to bring in some kind of expert, somebody to prove that there was a rightful return available to her and that she did receive that rightful return. So, in essence, the trial judge found, in summary, that the plaintiffs didn't need the burden of proof, reduced to the simplest terms. Isn't that the gist of the court's ruling? Yes, Your Honor, I think that's ultimate. It was a failure of proof. I believe ultimately it was a failure of proof, yes. Thank you. Your Honor, if there's no other questions from the court, I yield back the rest of my time and ask this court to affirm the judgment of the trial court. Thank you. Mr. Gobel. Thank you. First, a brief point in passing with all respect to counsel. Counsel argued this morning was not an associate, to my knowledge, of Mr. Flint's firm, but I do know for a fact that he never appeared in the trial court proceedings. Counsel argues that this was about protecting corporations, Maloney, from liability, from all these lawsuits that were coming. At trial, evidence was produced, testimony was produced. We went through, I went through, case by case, all the lawsuits that were identified by the Maloney brothers that were supposedly coming down to crush Maloney. And the record will show that with respect to each and every one of them except the Jewel suit, they were all settled and paid for out of the assets of Maloney Transport. They were gone. And they were all relatively small. You can see that in the record. The only case that was big was this Jewel case. The problem with the Jewel case was that it was a trucking accident, a personal injury accident, and the insurance carrier that Maloney had went bankrupt, broke into receivership, to state it properly. The receiver took over the defense of the lawsuit on behalf of Maloney and basically kicked in policy coverage so that the plaintiffs got that. The plaintiffs figured that they could get around that somehow and come against, I'm sorry, the plaintiff became Jewel. Jewel's subrogate came against Maloney, and case law in Illinois says that a subrogate has no rights against the receiver and an insurance involuntary or an insurance insolvency proceeding. It all went away. And in the meantime, before it had gone away, there was a letter that's in the record from Consul for the receiver for the insurance company saying, don't worry about this, we've got it covered, we'll take care of it, we'll indemnify it. There was never a true threat to Maloney from all these lawsuits. Are you disputing that litigation was pending? The threat to destroy the companies? Absolutely. And the record is there to show that. The trucks were transferred when there was no litigation pending? Well, no, litigation was pending, but the litigation was recognized as what it was, which was not this enormous threat. There's a letter from the – and this is in the record as well – there's a letter from the reorganization expert that was retained by Maloney Transport, the corporation, without telling the mother, of course, that said the corporation's cash flow is fine. There are some lawsuits out there, but it's got positive cash flow. It still has value. There was. Did you have an expert testify as to what the value, the book value of the corporation was? No. Why not? I'm in somewhat the same position that the counsel in the previous case was when you talked about why they didn't go to England. This is a family fight. Family has limited resources. And so we made the best proof that we could, given the resources that we had. Unfortunately, one of the reasons that we were really hampered was this issue about discovery and the fact that we didn't get discovery. In my experience, discovery of documents is not invasive, but it's the lifeblood of commercial cases. And if you can't get to those documents in the case, who knows? You know, I don't know. We were blocked. We were blocked in terms of discovery. That really hurts with the case. We were misjudged by Judge Popejoy. Our contention is that a reasonable person looking at this record will see that there were significant breaches of the fiduciary duty that the defendants, as shareholders, directors, officers and family members owed to Carolyn Maloney. They got the trucking company. Counsel, is there a reason that – well, the other side argued this morning that the subpoenas were denied to companies which were not defendants. Is there a reason that you did not subsequently join them as defendants? Because we had no cause of action against them. We wanted simply to discover their documents. It's the same kind of thing that goes on in all kinds of commercial cases all the time. Nothing extraordinary here. What was extraordinary was, in my – for whatever it's worth – opinion, that the court denied those motions. If the court has other questions, I think I've covered what I wanted to cover. Thank you all for your time. Thank you. Case of the Pickman, advisement.